**Jack OWENS, Plaintiff,**

v.

**FREEMAN UNITED COAL MINING, Defendant.**

**No. CV84–4588.**

United States District Court, S.D. Illinois, Benton Division.

Dec. 31, 1986.

Jack M. Owens, pro se.

Robert W. Lewis, Benton, Ill., Kathryn S. Mueller, Louis R. Hegeman, Gould & Ratner, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This cause is before the Court on defendants' Motion to Dismiss and for Summary Judgment. Both parties have submitted briefs and reply briefs on the dismissal and summary judgment motions.

## PROCEDURAL BACKGROUND

Plaintiff, then represented by counsel, filed a two count complaint against defendant on November 29, 1984. Service was eventually made, an answer filed in June of 1985 and discovery began shortly thereafter. In February of 1986, counsel for plaintiff asked the Court to allow him to withdraw due to irreconcilable differences with the plaintiff regarding the way in which the case was being handled. The Court granted the request and advised plaintiff to find another attorney.

In July of 1986, plaintiff informed the Court that he was having difficulty finding another attorney willing to handle the case. The Court granted a continuance motion and gave plaintiff until September 5, 1986 to locate counsel or face the possibility of proceeding pro se. Through a number of pretrial conferences and trial date postponements, this Court has bent over backwards in an attempt to juggle its schedule in hopes of plaintiff locating new counsel. In fact, on November 17, 1986 a status conference was held in anticipation of the plaintiff having finally found willing representation. Unfortunately, the attorney located by plaintiff informed the Court that he would only enter an appearance for plaintiff if the Court could further postpone the trial date to a time which would accommodate the schedule of new counsel. It may be unfortunate, however the Court cannot set its calendar on the basis of an attorney's convenience. Plaintiff is now proceeding pro se and, in this Court's opinion, is doing an above average job of representing himself.

## SUMMARY JUDGMENT

### Count I

Count I of plaintiff's complaint alleges several breaches of the Age Discrimination In Employment Act, 29 U.S.C. § 623, on the part of defendant. Defendant asserts that summary judgment is warranted as to

any allegations in Count I which occurred prior to 300 days before plaintiff filed his charge with the Illinois Department of Human Rights (IDHR). Defendant also argues that summary judgment is proper as to all allegations not reflected in the charge filed with IDHR. In support defendant cites to 29 U.S.C. 626(d) and relevant case law. Plaintiff filed his charge with the IDHR on May 2, 1984. It reads as follows:

I. Since at least December, 1982 and continuing, most recently about March 7, 1984, Respondent has refused to recall me. I was hired by Respondent on July 17, 1967. My most recent position (as of my 12/82 lay off) was General Underground Foreman Conveyor Belt Supervisor.

II. No reason has been given for the action.

III. I believe I have been discriminated against due to my age, 49 and Physical Handicaps, Fractured Vertabrae and Ruptured Disc in that:

A. At the time I was laid off, George Higgins, Mine Superintendent, told me I would be moved to either Mine # 4 or Mine # 6 within 30 days of my lay off. I was not moved. Then he told me I would be recalled at such time the economy improved.

B. The economy has improved because Respondent has been recalling people. These people are all under the age of 40. They have been placed into positions I held or for which I am qualified. For example, on or about March 7, 1984, Respondent recalled Vernan Mandrell (about 37) into the position of Guard but immediately moved him into the position of General Underground Foreman. I trained Mandrell. He worked under my supervision for seven to eight years. Respondent also recalled Charles Issler (about 32 or 33) on or about 3/7/84. Issler also worked under me. I do not know, however, if Issler actually returned to work. Furthermore, Respondent recalled ten to twelve Face Bosses about 3/7/84. All are under the age of 40. None, to my knowledge, even injured himself on the job.

I performed the job of Face Boss on a regular basis for over five years when people were off work because of sickness, vacation, or injury.

C. In January, 1980, I injured myself on the job. The injury resulted in a fractured vertabrae and ruptured disc and caused me to be off regular work for seven months. I returned to work, however, and performed my job with no problem. Also, during the time I was hospitalized I was requested to advise supervisors as to what actions to take regarding the operation of all the conveyor belts on the east half of the coal mine. Because of that injury Respondent is perceiving me as handicapped and a safety risk. There are other employees about my age who had also injured themselves on the job who have not been recalled either.

A reading of the charge filed with the IDHR leads only to the conclusion that plaintiff was complaining of a failure to rehire. Nowhere on the face of the charges filed are there allegations of discrimination in job assignments or termination of employment. Yet in Count I of the complaint before this Court, plaintiff raises allegations of both discriminatory job assignments and employment termination.

■ The Court of Appeals for the Seventh Circuit has stated that a court should read charges filed with the appropriate administrative agency broadly when determining its jurisdiction to hear a claim for relief. *Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1054 (7th Cir.1985). Even the broadest reading of the charges filed by plaintiff with the IDHR would not yield any indication of plaintiff taking issue with past job assignments. That being the case, the plaintiff cannot raise the issue in litigation. *Foit v. Suburban Bancorp*, 549 F.Supp. 264 (D.Md.1982). It is only with the broadest of readings that this Court could find any inkling of plaintiff's displeasure with the actual termination of his employment. Although this Court is nowhere near con-

vinced that the charges filed reflect any accusation of discriminatory discharge, it does not choose to dismiss the allegations in the complaint which address discriminatory discharge on the basis of failure to include the same in the IDHR charges.

■ Those allegations in the complaint which might be read as dealing with discriminatory discharge should be dismissed for a different reason. Plaintiff filed his charges with the IDHR more than 300 days after his lay-off from defendant's employ. There is no question that an individual wishing to pursue a cause of action under the Age Discrimination in Employment Act must file charges with the Equal Employment Opportunity Commission or its state counterpart within 300 days of the complained of activity.[1] Plaintiff admits as much but argues that defendant's discriminatory conduct amounted to a "continuing violation" which would allow for the filing of charges more than 300 days after termination. "An employer's terminating an employee, unlike the employer's failure to hire or to promote, is a completed act; that its consequences linger does not indicate that the discrimination itself is continuing." *Caldwell v. National Association of Home Builders,* 771 F.2d 1051, 1055 (7th Cir. 1985). Those allegations in Count I of plaintiff's complaint which address discriminatory job assignments and discharge should be dismissed for lack of subject matter jurisdiction. The requirements of the charge filing procedures in 29 U.S.C. § 626 have not been met.

The sole issue remaining in Count I, which summary judgment is being sought on, is whether defendant discriminated against plaintiff in its rehire process because of his age. An exhaustive search of the relevant case law has left this Court without specific criteria for determining the requirements of a prima facia case. There is plenty of case law on age discrimination in termination and promotion, however little if any law has been developed on the specific issue of age discrimination in the rehire of laid-off employees. Using the legal standards developed for various age

discrimination suits this Court feels it is possible to find enough common thread to weave a set of prima facia requirements for a claim of this nature.

■ The burden of proof formula set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) has been held by the Seventh Circuit to apply to cases under the Age Discrimination In Employment Act. *See La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405 (7th Cir.1984); *Huhn v. Koehring Co.,* 718 F.2d 239 (7th Cir.1983). The courts have at times modified the *McDonnell Douglas* requirements to fit the particular circumstances of the case. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252 n. 5, 101 S.Ct. 1089, 1093 n. 5, 67 L.Ed.2d 207 (1981); *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1424 n. 3 (7th Cir.1986); *Matthews v. Allis Chalmers,* 769 F.2d 1215, 1217 (7th Cir.1985). Through reviewing the basic requirements under *McDonnell Douglas* and the various modifications used in previous age discrimination cases, this Court has established what it believes to be the elements necessary to establish a prima facia case of age discrimination in the rehire process. The plaintiff must make the following showing: (1) that the employer had a policy of rehiring individuals who were previously terminated (laid-off) during a reduction in work force; (2) that plaintiff was a member of the class of former employees eligible for rehire; (3) that plaintiff is a member of the protected age group; (4) that plaintiff was qualified for a rehire position; (5) that reasonable evidence exists for inferring that the employer intended to discriminate in not rehiring plaintiff.

A review of the factual scenario surrounding this case is necessary in evaluating whether plaintiff has met his prima facia burden of proof. From 1972 to 1982 plaintiff worked in a supervisory position as a "Belt Foreman" for the defendant coal mining company. In December of 1982 the defendant closed its Orient # 3 mine at which plaintiff worked. As a result of the

1. In some cases the actual time deadline may be 180 days.

mine closing all "Belt Foremen" and the majority of all other mine employees, including supervisory personnel, were laid-off. On January 20, 1983, Mr. Robert Stewart, Director of Personnel and Employee Benefits at defendant coal mining company, called the plaintiff to offer him a rehire position as a watchman at the company's Orient # 5 mine. At this point each side has a slightly different rendition of the facts.

The defendant maintains that plaintiff refused employment as a watchman. In support it submits the affidavit of Robert Stewart stating that plaintiff turned down a watchman position both on January 20, 1983 and in July of 1984. There is also a letter submitted, which plaintiff admits receiving, that confirms the company's understanding that plaintiff refused the watchman position offered via telephone call on January 20, 1983.

Plaintiff maintains that the job offer over the phone came only after he had complained that another younger supervisor had been offered a position prior to plaintiff. He also maintains that he never accepted or refused the job offer because the company would not authorize travel expenses and never told him the exact hours he would work or who his supervisor would be. In support of his position, plaintiff has submitted a letter which he claims to have written to Robert Stewart after receiving the company's confirmation letter. In the plaintiff's opinion, the job offer was not valid until his questions were answered and the offer was put in writing. Stewart and the company deny ever receiving such a letter.

At this point it may be enough for this Court to stop its analysis and hold that plaintiff failed to meet his burden of showing that reasonable evidence exists for inferring that the employer intended to discriminate in not rehiring plaintiff. It is not disputed that a job offer was made, and the only dispute is whether plaintiff outright refused it or failed to answer the offer at all. However, further analysis of some of the reams of discovery paper which have been filed as exhibits might prove even more enlightening.

It may not be apparent whether or not plaintiff refused the initial watchman job offer or merely failed to respond one way or another. However, it is quite clear how plaintiff felt about working as a watchman. From the letter which plaintiff claims to have sent to Robert Stewart comes the following excerpts.

"Later and during another conversation, pertaining to the same position, I asked if the salary could be one-half of my previous salary or at least meet what I was drawing unemployment?"

"After being a capable and loyal company employee for 16 years, I truly felt that your offer was not justifiable. You stated in your letter that I had been considered in the past, if so, why was I not offered the P.M.A. job?"

From a July 20, 1984 letter sent by plaintiff and received by Robert Stewart comes the following excerpt.

"Appreciate you continuing to consider me for a position, but why haven't I been considered for a more equitable paying job? When laid off I was told that type of position would be *made* for me." (emphasis his).

The following dialogue is taken from the plaintiff's deposition in which counsel for defendant was questioning plaintiff.

Q. How would your status have been affected adversely by taking the job as watchman, Mr. Owens?

A. I had worked for and gained respect as an underground supervisor and I feel a night watchman was below what I figured I could do and what I should have had. I am not crippled and I am not old and decrepit.

Q. So it is your testimony that you thought that a job as a watchman was beneath your abilities?

A. Yes, that is just exactly what I thought.

It seems clear to the Court that plaintiff was not pleased with the idea of working as a watchman and felt that a better job should have been offered him.

Though many of the documents submitted as exhibits in this case are challenged by the opposing side, some information which stands undisputed is of great interest. The Court has gleaned the following from a list of defendant's supervisory employees who were offered rehire positions. (Defendant's exhibit # 2). Thirty-two of defendant's supervisory personnel who were laid off in December of 1982 were offered rehire positions. Of the thirty-two, eighteen were offered watchman positions. Of the eighteen, thirteen such offers were accepted. Of the thirteen who accepted, eight eventually were promoted back to supervisory positions. None of the employees rehired were placed in a "Belt Foreman" position. Thirteen of the employees offered rehire positions were in the 40 to 69 protected age classification. Furthermore, from a list submitted by plaintiff himself (plaintiff's exhibit # 14), it is noticed that plaintiff was the second laid-off employee to be offered a rehire position. The offer was made only one month after lay-off, and the only person offered a position quicker was also in the protected age group. Most other offers, including plaintiff's second chance, came more than a year after lay-off.

It is unnecessary for this Court to speculate as to what might have happened if plaintiff had swallowed his pride and accepted the non-supervisory position. However, one cannot help but think that he may well have been working in a supervisory position with defendant by now.

▮ In summary, this Court is holding that plaintiff has failed to present a prima facia case and that the undisputed facts indicate that he cannot do so. Plaintiff is responsible for showing this Court that reasonable evidence exists which would allow this Court to infer discriminatory intent. Because it is undisputed that plaintiff was offered a rehire position on two separate occasions, that no one was rehired as a "Belt Foreman", and that a majority of those rehired were offered non-supervisory positions, this Court finds no indicia of discrimination. The question of whether plaintiff actually refused the job offers or simply refused to answer until given further information is irrelevant. Plaintiff has offered no support for his theory that the job offers were invalid until all questions were answered to his satisfaction and the offers were put in writing. The Court can sympathize with a person who has risen to a high level of achievement on the ladder of his career only to be laid-off due to the economy. However, the Court sees no reason for that same individual to remain unemployed when given an opportunity to start climbing back up the career ladder. The validity of Count I of plaintiff's complaint is best summed up by an exchange which took place during plaintiff's deposition.

Q. Mr. Owens, I have the right to ask you what you are looking for and what you are claiming in this lawsuit regardless of whether you have the complaint in front of you or not, and that is what I am asking right now. Do you claim that you were failed or denied reinstatement or recall by the company because of your age?

A. Yes.

Q. What facts do you have to support that claim?

A. None at the moment.

### DISMISSAL

### Count II

Count II of plaintiff's complaint seeks damages on the theory that defendant breached its statutory duty of not discriminating against him for exercising his rights under the Illinois Workers Compensation Act. This Court's jurisdiction is invoked through the doctrine of pendant jurisdiction. The defendant argues that because Count I of plaintiff's complaint has failed to pass the summary judgment stage, the Court should decline the exercise of its discretion in hearing the pendent claim.

▮ The doctrine of pendent jurisdiction gives a federal court power to hear a claim which has no independent basis for federal jurisdiction if the claim arises out of the same common nucleus of operative

fact which a federal claim sufficient to confer federal jurisdiction does. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, a federal court should hesitate to adjudicate a claim totally dependent on state law when the federal claim has been dismissed prior to trial. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir.1984). It is this Court's position that unless a great hardship would accrue to a party or the interests of judicial economy mandate otherwise, the proper place to hear an independent state law claim is in the state courts. There would appear to be no hardship to plaintiff caused by this Court's decision not to hear the state claim. Defendant points out that there is no time bar to plaintiff refiling his state claim in state court. The Illinois courts have established that this relatively new type of action is guided by a five year statute of limitations. *Henon v. Lever Brothers Company*, 114 Ill.App.3d 608, 70 Ill.Dec. 322, 449 N.E.2d 196 (1983). Furthermore, the plaintiff may benefit from the dismissal by being able to locate counsel who would be willing to pursue such an action rather than entering this particular suit after the bulk of pleadings have been filed. Therefore, the Court sees no reason why it should exercise its discretion in hearing this remaining state claim.

\* \* \*

Accordingly, defendant's Motion to Dismiss and for Summary Judgment (Document No. 33) is GRANTED. Those allegations in Count I of plaintiff's complaint which deal with discriminatory job assignments and termination of employment are DISMISSED for lack of subject matter jurisdiction. Summary Judgment is GRANTED in favor of defendant on the remaining allegations in Count I. The Court declines to exercise pendent jurisdiction as to Count II and hereby DISMISSES Count II of plaintiff's case for lack of subject matter jurisdiction.

IT IS SO ORDERED.