**Subhash C. MALHOTRA, Plaintiff,**

v.

**COTTER & COMPANY, a Delaware corporation, Defendant.**

No. 86 C 9460.

United States District Court,
N.D. Illinois, E.D.

Aug. 24, 1988.

John L. Gubbins, John L. Gubbins & Assoc., Ltd., Chicago, Ill., for plaintiff.

Steven H. Adelman, P.C., Donald J. McNeil, Keck, Mahin & Cate, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

On April 27, 1987 Mr. Subhash Malhotra filed his first amended complaint, alleging that Cotter & Company (1) violated Title VII and Section 1981 of the Civil Rights Act of 1866 by denying him promotions on the basis of his race and national origin; (2) violated the same statutes by suspending and terminating him in retaliation for his filing the present action. Mr. Malhotra also alleged that the defendant subjected him to "a pattern of harassment and discrimination due to his race and national origin."

Before the court is the defendant's motion for summary judgment. Based upon the undisputed material facts, it is granted.

## BACKGROUND FACTS

The parties do not dispute the following facts. Mr. Malhotra is an Asian Indian. In 1966 Mr. Malhotra received an M.S. degree in accounting from the Commerce College in the University of Delhi, India.

In 1977, Mr. Malhotra passed the C.P.A. exam. He went to work as a senior accountant at the accounting firm of Washington, McMahon & McKeever.

In 1978, Mr. Malhotra was hired as an Internal Auditor for Cotter & Company.

On or about August 30, 1985, Mr. Malhotra filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), alleging that he had been discriminated against on the basis of his national origin.

Mr. Malhotra's charge listed eight positions which he claimed to have been discriminatorily denied between 1979 and 1983 and two positions which he claimed to have been discriminatorily denied after 1983.

The charge further alleged that Mr. Malhotra was as qualified, or more qualified, than each of the individuals hired and/or promoted to the listed positions, because Mr. Malhotra is a C.P.A., whereas many of

the individuals hired and/or promoted had less seniority and did not have C.P.A.s.

Prior to the filing of his discrimination charge, Mr. Malhotra specifically requested consideration for two jobs: (a) the job of Accounts Payable Manager, from which Ron Greenberg was terminated in late 1983; and (b) the Finance Manager job, from which Dave Moorshead was terminated at the end of 1984.

Mr. Malhotra did not apply for any other jobs at Cotter & Company because he believed that he had to apply through his supervisor, Internal Audit Manager Mr. Roth.

In December 1983, Ron Wesoloskie replaced Mr. Greenberg as Accounts Payable Manager.

In late 1984 the position of Finance Manager opened up. Controller Ray Grymski, who had the responsibility to select the new Finance Manager, learned of Mr. Malhotra's interest in the position.

Mr. Grymski considered many applicants, including Mr. Malhotra and Mr. Sweenie.[1] Mr. Grymski did not, however, call and set up an interview with Mr. Malhotra. Mr. Grymski's review of Mr. Malhotra's resume revealed that Mr. Malhotra had spent the previous seven years as an Internal Auditor for Cotter & Company and had had an auditing/accounting role with most of his previous employers.

Mr. Grymski's review of Mr. Sweenie's resume revealed he had an M.B.A. from Northwestern University in Finance/Marketing, had experience in the development of marketing plans for financial services with Continental Illinois National Bank, had worked a year for a consulting firm in acquisition strategy planning and other financially related areas, had worked a year for Baxter–Travenol as a Senior Financial Analyst, and had been employed by Cotter & Company in its Finance Department for three years, first as a Financial Analyst, and then as a Financial Planning Manager.

When Mr. Moorshead left, Mr. Sweenie was named as Assistant Manager of the Finance Department. Mr. Sweenie ran the department on an interim basis until he became Finance Manager in June 1985.

In January 1986, Mr. Malhotra learned that the Import Documentation and Distribution Manager had died. Mr. Malhotra expressed interest in the position.

Mr. Malhotra was offered the position of Import Documentation and Distribution Manager effective January 21, 1986. Mr. Malhotra accepted. There were three other employees in the Import Department: John Sugihara, Betty Matos and Sandra Molina.

In December 1986, Mr. Malhotra filed this lawsuit, claiming that he had been wrongfully denied certain promotions.

On February 4, 1987 Betty Matos complained in writing about Mr. Malhotra.

## DISCUSSION

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment if the pleadings and evidentiary materials show that there is no genuine issue of material fact. A court must enter summary judgment if, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In making such a showing, there must be sufficient evidence favoring the non-movant for a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence is not enough. *Id.,* 106 S.Ct. at 2512.

1. Failure to Promote

A. *Title VII*

Defendant argues that Mr. Malhotra's EEOC charge is untimely as to all pro-

---

**1.** Mr. Malhotra admits this fact by virtue of his failure to controvert it in his Local Rule 12(f) statement. Moreover, he did not present any evidence which contradicted Mr. Grymski's affidavit on this issue.

motions prior to 1984. Mr. Malhotra argues that either (1) defendant waived the statute of limitations defense of 42 U.S.C. § 2000e–5(e) or (2) defendant's failure to promote him for seven years was a "continuing practice," so that the statute of limitations does not apply.

▊ Defendant did not waive the statute of limitations defense, as in its Answer to the First Amended Complaint defendant denied "that a charge was filed within 180 days of all the claimed unlawful employment practices alleged in the Complaint."

▊ Neither does defendant's conduct constitute a "continuing violation" of Title VII. In *Stewart v. CPC International, Inc.,* 679 F.2d 117, 120 (7th Cir.1982) the Seventh Circuit held that a defendant has committed a continuing violation when (1) it has engaged in a practice of discrimination as to which it is difficult to fix the exact day on which a violation occurred or (2) where an employer has covertly followed a practice of discrimination. But a finding of a continuing violation must be based upon a present violation within the relevant time period. *Hemmige v. Chicago Public Schools,* 786 F.2d 280, 284 (7th Cir.1986).

Because Mr. Malhotra has not presented sufficient evidence from which a jury could reasonably find a *present* violation of Title VII, there is no basis for his continuing violation theory.

Only one of the alleged failures to promote occurred within 300 days of the filing of Mr. Malhotra's EEOC charge: that of Thomas Sweenie to Finance Manager in June 1985. Mr. Malhotra has not presented sufficient evidence to show that defendant's failure to promote him to Finance Manager was racially discriminatory.

The ultimate inquiry in a Title VII disparate treatment case is whether discriminatory intent was a "but for" cause of the adverse action. *Maguire v. Marquette University,* 814 F.2d 1213, 1216 (7th Cir. 1987). Where the defendant has offered a legitimate, nondiscriminatory reason for rejecting the plaintiff, the plaintiff must show that the reasons advanced are a pretext and that a motivating factor in the

defendant's decision was discrimination. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 804–5, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

An employee may show that his employer's proffered reason is pretextual by demonstrating either (1) that the employer's explanation is unworthy of credence or (2) that it is more likely that a discriminatory reason actually accounted for the defendant's actions. *Andre v. The Bendix Corporation,* 841 F.2d 172, 175 (7th Cir.1988); *Benzies v. Illinois Department of Mental Health,* 810 F.2d 146, 148, (7th Cir.1987).

Assuming *arguendo* that Mr. Malhotra's evidence establishes a prima facie case, defendant has articulated a legitimate, nondiscriminatory reason for failing to promote Mr. Malhotra to the position of Finance Manager. Defendant submitted evidence that it promoted Thomas Sweenie rather than Mr. Malhotra because Mr. Sweenie was more qualified for the job of Finance Manager. Mr. Malhotra has not submitted evidence from which a trier of fact could conclude that defendant's proffered reason is pretextual.

There is no evidence, for example, that defendant's proffered reason for failing to promote Mr. Malhotra is unworthy of credence. The evidence instead shows that Mr. Sweenie was indeed more qualified than Mr. Malhotra for the job of Finance Manager. Mr. Sweenie had an M.B.A. in Finance and Marketing from Northwestern University. Mr. Sweenie had been acting manager of the Finance Department for six months prior to the promotion. And Mr. Sweenie had worked in several finance-related jobs, *e.g.* as a Senior Financial Analyst, before working with defendant.

Mr. Malhotra argues that he was better qualified for the position of Finance Manager because he has a C.P.A. and had audited 90% of the Finance Department. This argument is not persuasive, as Mr. Grymski, defendant's Controller, presented evidence that auditing and accounting skills are not very important to the work of Finance Manager.

Neither does the remark by Mr. Roth, Mr. Malhotra's supervisor, in December

1984, that Mr. Malhotra "had credentials," show that Mr. Malhotra was better qualified than Mr. Sweenie for the position of Finance Manager. (Plaintiff's deposition p. 114–5). First, Mr. Roth was not responsible for making the Finance Manager promotion. More importantly, Mr. Roth's remark simply does not address the critical issue: whether Mr. Malhotra had *more* finance credentials than Mr. Sweenie had.

Neither has Mr. Malhotra shown that it is more likely that race/national origin discrimination actually accounted for the defendant's failure to promote him to Finance Manager. There is no direct evidence that defendant harbored racial animus. Mr. Malhotra relies instead on what he considers to be circumstantial evidence of racial animus: (1) the fact that Mr. Roth had not previously submitted Mr. Malhotra's name for promotions; (2) the fact that Mr. Grymski and Mr. Lobo ignored him during the period when the Finance Manager promotion was under consideration; and (3) the fact that defendant had no minority managers.

This court does not agree that the above evidence suggests that defendant harbored racial animus. First, the fact that Mr. Roth had not previously suggested to his superiors that Mr. Malhotra be promoted does not show racial animus. There is no evidence that Mr. Roth suggested that white employees who were similarly situated to Mr. Malhotra be promoted. (Plaintiff's deposition, p. 118). And it is undisputed that Mr. Roth did in fact suggest Mr. Malhotra for the Finance Manager position.

Second, the fact that in January and February 1985 Mr. Grymski and Mr. Lobo failed to return Mr. Malhotra's phone calls does not show racial prejudice. They may have been busy; they may not have known why Mr. Malhotra called (Mr. Malhotra did not leave an explanatory message with their secretaries); or they may have wished to avoid Mr. Malhotra because they knew that, for a legitimate, nondiscriminatory reason, he would not be promoted to Finance Manager. Similarly, the fact that

Mr. Grymski and Mr. Lobo failed to say hello to Mr. Malhotra during the pre-promotion period is too ambiguous to support Mr. Malhotra's pretext argument.[2]

Finally, Mr. Malhotra's description of the racial makeup of defendant's management staff—that defendant had no minority managers—does not show that defendant harbored racial animus. Defendant presented evidence that in fact it employed eleven minorities in managerial positions. Mr. Malhotra has not challenged this evidence. Neither has Mr. Malhotra presented applicant pool data, *i.e.* statistics showing what percentage of minority managers could be expected from race-neutral hiring. In short, Mr. Malhotra's evidence as to the racial makeup of defendant's managerial staff does not show that defendant harbored racial animus.

■ Because Mr. Malhotra has not presented evidence from which a trier of fact could reasonably find that defendant's proffered reason for not promoting Mr. Malhotra to Finance Manager is pretextual, plaintiff has not shown a present violation of Title VII. Defendant's motion for summary judgment as to Mr. Malhotra's Title VII/promotion claim is therefore granted.

## B. *§ 1981*

Defendant argues that Mr. Malhotra's Section 1981 promotion claim is time-barred as to nine of the ten alleged promotions, citing the recent Supreme Court decision in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In *Goodman* the Court held that a state's personal injury statute of limitations governs Section 1981 actions. In Illinois the statute of limitations for personal injury actions is two years. *See* Ill.Rev.Stat. ch. 110, § 13–202 (1983).

■ This court concludes that, because *Goodman* overruled clear Seventh Circuit precedent, *see Waters v. Wisconsin Steel Works*, 427 F.2d 476 (7th Cir.), *cert. denied* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), it should not be given retroactive

---

2. Mr. Roth's statement to Mr. Malhotra, in November 1980, that "they will never hire you" is also too ambiguous to constitute evidence of *racial* prejudice. (Plaintiff's deposition, p. 73).

effect in this case. *Smith v. Firestone Tire & Rubber Co.*, 675 F.Supp. 1134 (C.D. Ill.1988); *Shinault, et al. v. City of Chicago, et al.*, 1987 U.S. Dist. LEXIS 11972 (N.D.Ill.) [available on WESTLAW, 1987 WL 27421]; *see also Saint Francis College v. Al Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986). The 5–year statute of limitations set forth in Ill.Rev.Stat. ch. 83 § 16 therefore applies to this case. Because Mr. Malhotra filed this action on December 5, 1986, Mr. Malhotra's Section 1981 claim is timely as to all the allegedly discriminatory promotions which occurred after December 5, 1981.[3]

Mr. Malhotra testified that, beginning in 1980, he regularly told his supervisor Mr. Roth that he wished to be considered for promotion. (Plaintiff's deposition, p. 93). In the fall of 1984, Mr. Malhotra told Mr. Roth that he was interested in a promotion to Accounts Payable Manager (Plaintiff's deposition, pp. 102, 110, 146). Mr. Malhotra did not, however, approach anyone about any particular job opening until the position of Finance Manager opened. (Plaintiff's deposition, p. 102, p. 144).[4] In short, Mr. Malhotra expressed interest in only three particular promotions: that of Accounts Payable Manager, that of Finance Department Manager and that of Import Documentation and Distribution Manager. (Plaintiff's deposition, p. 146, pp. 171–172).

■ Defendant argues that because Mr. Malhotra did not apply for any promotions except those of Finance Manager and Accounts Payable Manager, Mr. Malhotra has

not produced sufficient evidence that he was wrongly denied these other promotions. This court reaches the same conclusion but for a different reason.

Failure to apply for a promotion which was never posted does not preclude a plaintiff from succeeding on a Section 1981 or Title VII action.[5] *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 797 (11th Cir. 1988); *Robinson v. Montgomery Ward & Co., Inc.*, 823 F.2d 793, 796 (4th Cir.1987); *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 866 (7th Cir. 1985). But Mr. Malhotra did not produce evidence to rebut defendant's proffered reason for promoting other people: that these people were better qualified than Mr. Malhotra for the promotions at issue.[6] (Plaintiff's deposition, pp. 155–171).

Mr. Malhotra similarly failed to present evidence that he was the best qualified person for the promotions for which he expressed interest, *i.e.* Accounts Payable Manager and Finance Manager. (Plaintiff's deposition, p. 111). And—as discussed above—Mr. Roth's failure to tell others of Mr. Malhotra's interest neither shows intentional discrimination nor in itself constitutes disparate treatment, because there is no evidence that Mr. Roth behaved any differently vis-a-vis white employees. (Plaintiff's deposition, p. 118).

For the forgoing reasons, this court holds that Mr. Malhotra has not produced sufficient evidence from which a trier of fact could reasonably find that the denial of any of the post–1981 promotions was due to Mr. Malhotra's race.

---

**3.** The evidence as to all the promotions before June 1985 is sketchy at best. Mr. Malhotra's deposition places many of these promotions, *e.g.* promotions of Ron Greenberg, Tom Filipski, Tom Lanke, Keith Wrobel, John Herbert, Mike Podjasek (to Accounting Supervisor), before December 1981. And Mr. Malhotra presented little or no evidence of the above individuals' qualifications for the jobs to which they were promoted. (Plaintiff's deposition, pp. 65–93, pp. 155–170).

**4.** Mr. Malhotra mistakenly believed that he would be guilty of "insubordination" if he asked someone other than Mr. Roth for a promotion. (Plaintiff's deposition, pp. 75, 94).

**5.** The same standards apply to both disparate treatment/Title VII actions and employment discrimination actions under Section 1981. *Reeder–Baker v. Lincoln National Corp.*, 834 F.2d 1373 (7th Cir.1987).

**6.** *See Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 797 (11th Cir.1988) (the *McDonnell–Douglas* structure of proof should be used flexibly, as an evidentiary guide to determine the ultimate question in a racial discrimination case: whether the employer discriminated against the claimant on the basis of race).

## 2. Racial Harassment

Mr. Malhotra alleged in his amended complaint that, after he began working in the Import Department, defendant denied him a healthy work environment. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at p. 19. Defendant argues that because Mr. Malhotra did not file an EEOC charge including these allegations of racial harassment, his racial harassment claim is barred. This court agrees.

█ A plaintiff may bring suit as to any claims of discrimination which are like or reasonably related to the allegations of his EEOC charge and which grow out of that charge. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (en banc). The standard is a liberal one, in order to effectuate the remedial provisions of Title VII. *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857 (7th Cir.1985).

█ Mr. Malhotra's EEOC charge focused exclusively on defendant's alleged failure to promote him from 1978 through 1985. Mr. Malhotra's racial harassment claim involves a different legal theory, different employees, and a different period of time. The EEOC investigation of Mr. Malhotra's charges could not reasonably be expected to include the facts underlying Mr. Malhotra's race harassment claim. *See Babrocky, supra,* 773 F.2d at 864 n. 2. *See also Caldwell v. Nat. Ass'n of Home Builders,* 771 F.2d 1051, 1054 (7th Cir. 1985); *Zuckerstein v. Argonne Nat. Laboratory,* 663 F.Supp. 569, 576 (N.D.Ill.1987) (claim of discriminatory failure to rehire not substantially similar to EEOC charge of discriminatory termination); *Owens v. Freeman United Coal Min.,* 649 F.Supp. 1565, 1567 (S.D.Ill.1986) (claim of discriminatory job assignment not substantially similar to EEOC charge of discriminatory failure to rehire).

█ Assuming *arguendo* that Mr. Malhotra could litigate his race harassment claim, he has not presented evidence from which a trier of fact could find that defendant had reason to know that Mr. Malhotra was being harassed by his coworkers on the grounds of his race or national origin. *See Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1422 (7th Cir.1986).

Mr. Malhotra described several incidents of what he considered to be harassment, but he did not present any evidence that a similarly situated white manager had ever been subjected to similar treatment. And because none of the incidents and remarks contained a reference to race, a trier of fact could not assume that these incidents were due to plaintiff's race. (Plaintiff's deposition, pp. 277–288). A jury could not reasonably infer from the evidence that the alleged harassment was racial.[7]

The same analysis applies to Mr. Malhotra's racial harassment claim under Section 1981. *See Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380–1 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).

## 3. Retaliatory Discharge

█ Defendant argues that Mr. Malhotra's retaliatory discharge/Title VII claim is barred because Mr. Malhotra did not file an EEOC charge alleging retaliatory discharge. This court agrees. Mr. Malhotra's retaliatory discharge claim is not "reasonably related to" his EEOC charge, which alleged only that defendant had repeatedly failed to promote him. *See Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985); *Probbit v. Keycom Electronic Pub.,* 625 F.Supp. 400 (N.D.Ill. 1985).

█ Assuming *arguendo* that Mr. Malhotra's retaliatory discharge claim is not barred, he has not presented evidence from which a jury would reasonably conclude that the defendant's proffered reasons for terminating Mr. Malhotra were pretextual.[8]

---

**7.** In addition, there is not sufficient evidence that defendant refused to address the alleged harassment. (Plaintiff's deposition, pp. 248–260; Mr. Fee's deposition, pp. 14–15).

**8.** The structure of proof in a retaliation case is similar to that in a discrimination case. *See generally Collins v. State of Ill.,* 830 F.2d 692 (7th Cir.1987).

**1210**

Richard Lynn, defendant's General Counsel and Vice President, presented evidence that defendant terminated Mr. Malhotra because he (1) was not properly performing his job; (2) was not getting along with company personnel or suppliers outside the company; (3) was devoting too much company time to personal business. Specifically, in February 1987 Mr. Malhotra's coworker, Ms. Matos, wrote a letter to Dan Cotter, President of Cotter and Company, criticizing Mr. Malhotra's job performance. Defendant investigated Ms. Matos' charges. Ms. Matos and another coworker, Ms. Molina, made statements complaining about Mr. Malhotra's poor communication skills, his poor job performance, and his inappropriate use of worktime. Many others, both within and outside of the company, complained of Mr. Malhotra's inefficiency, failure to cooperate, rudeness and inaccuracy. (Memorandum in Support of Motion for Summary Judgment, PX A–Q).

Mr. Malhotra has not presented any evidence that defendant could not have reasonably believed the abovementioned complaints. Neither has Mr. Malhotra presented any evidence either that defendant did not actually believe the abovementioned complaints or that defendant more likely terminated him from a discriminatory motive. (Plaintiff's deposition, pp. 277–288).

Finally, Mr. Malhotra has not presented evidence that defendant retained any white employees against whom similar complaints had been made.

In sum, because Mr. Malhotra has not submitted evidence from which a jury could reasonably infer that defendant's proffered reasons for terminating him were pretextual, defendant's motion for summary judgment on Mr. Malhotra's retaliatory discharge claims is granted.

### CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED.